GUTIERREZ *v.* MICHIGAN CONSOLIDATED GAS COMPANY.

1. TRIAL—MOTION FOR DIRECTED VERDICT—TAKING UNDER ADVISEMENT.
    It is permissible for a trial judge to take a motion for directed verdict under advisement pending determination by jury of issue submitted to it (CL 1948, § 691.691).

2. GAS—NOTICE OF LEAKAGE—EVIDENCE—QUESTION FOR JURY.
    Positive and direct testimony of plaintiff minor's brother that he gave gas company notice that gas was leaking in house occupied by the family presented issue of notice to company for the jury, the credibility of a witness being for the jury, not the trial judge.

3. TRIAL—DIRECTED VERDICT—EVIDENCE.
    A verdict may not properly be directed in favor of either party when the testimony presents controlling issues of fact.

Appeal from Wayne; Culehan (Miles N.), J. Submitted January 15, 1952. (Docket No. 48, Calendar No. 45,232.) Decided March 6, 1952.

Case by Lupe Salazar Gutierrez, a minor, by her next friend Joseph Gutierrez, against Michigan Consolidated Gas Company for injuries sustained when gas exploded. Judgment for defendant notwithstanding jury's disagreement. Plaintiff appeals. Reversed and new trial granted.

*Stewart A. Ricard,* for plaintiff.

*Dyer, Angell, Meek & Batten,* for defendant.

NORTH, C. J. In this suit Lupe Salazar Gutierrez, a minor, to whom we herein refer as plaintiff, by

REFERENCES FOR POINTS IN HEADNOTES

[2]  24 Am Jur, Gas Companies §§ 29, 30, 57, 61.
[3]  53 Am Jur, Trial § 365.

her next friend, seeks to recover damages for personal injuries caused by an explosion of gas, May 15, 1946, caused by leakage from the pipes through which gas for domestic use was furnished by defendant gas company to the house in which plaintiff, her parents, and her brother, Nicholas Salazar, then resided. Trial was by jury, and at the close of proofs defendant moved for a directed verdict. The trial judge took the motion under advisement as is permissible under statutory provisions. CL 1948, § 691.691 (Stat Ann 1949 Cum Supp § 27.1461); CL 1948, § 691.701 (Stat Ann § 27.1471). The jury disagreed and was discharged. Thereafter under the trial court's reservation of decision on defendant's motion for directed verdict, defendant moved "for judgment notwithstanding disagreement of jury." The motion was granted and judgment in favor of defendant entered. Plaintiff's later motion for a new trial was denied. She has appealed.

Decision turns upon whether a question of fact was presented for determination by the jury as to whether 2 days prior to the explosion plaintiff's brother, Nicholas Salazar, notified defendant by telephone that there was a gas leakage in the home of plaintiff and her brother, whereupon he was advised by the gas company that it would "send somebody over right away to fix it." We quote quite at length from the brother's testimony:

"My name is Nicholas Salazar. I am 31 years of age. * * * I am related to the girl who just left the stand, Lupe. I am brother to her. * * * I smelled gas in that house at 8960 Peterson on May 13, 1946. There is a basement in that house. There is no second floor to that house. It has just a floor and then they had this basement, a small room, I imagine you call it a basement. They had a door on the floor, a trap door, you had to open it up to go down the stairs. * * * There were no windows

in the basement, but there were 2 small ventilators. on opposite walls of the basement.

"On the 13th day of May, 1946, I smelled gas. * * * When I smelled that gas on the 13th of May, it was in the day time, about 2:30 in the afternoon. I was at that time on the midnight shift. * * * I did not go down to the basement at that time. I notified the gas people. I had the gas bill in my pocket. We did not have any telephone in the house. I walked to the corner to the beer garden and used the phone there. I knew the telephone number of the gas company at that time. It was Cherry 3500. I knew that was the telephone number because it is written right below the address on the gas bill. .I got the telephone number from the gas bill. I called up the gas company using that number on the gas bill. * * * A girl answered the telephone. She said this is the gas company. So I says I smell gas in my house, I says 8960 Peter-. son, the name is Nicholas Salazar. So she says just a minute, I will switch you to the service department. So I heard a click, and another girl answered the phone, and she says this is the service department. I says I smell gas in the house. I says the name is Nicholas Salazar, and the address is 8960 Peterson. So she says we will send somebody over right away to fix it. That was on the 13th of May, 1946.

"On May 15th, when my sister called me, I was sleeping at that time in the living room. She says that she smelled gas in the house again. So I got up—I woke up and got out, and asked her if the gas stove was on. She said no. I asked her about the water heater. She said it was not on. So I got up and I checked the burners with a match without opening the burners; so I checked the water heater with a match. There was no leak there, in the stove, or in the water heater. * * * From the time that I called the gas company on the 13th of May until the time when I was called by my sister on the 15th day of May, the gas company had not

been down to our house. When there was not anything leaking there in the kitchen * * * I opened the trap door and walked down the stairs. It was dark in there, so I asked my sister for a flashlight. She said we did not have any in the house. So then I asked her for some matches, and she handed me about 2 matches. So I struck a match to find the chain on the light to turn the light on because we did not have a switch upstairs. So when I struck the match it exploded."

Defendant produced undisputed testimony of several circumstances which it asserts tends strongly to mitigate against the truth of Nicholas Salazar's testimony that he did notify defendant of the gas leakage 2 days before the accident. However, none of such testimony presented unquestionable physical facts or circumstances which would foreclose giving any credence to the testimony of Nicholas Salazar. It was in the face of such a record in the trial court that the defendant made its motion for judgment notwithstanding the jury's disagreement, which motion was granted by the trial judge and judgment entered accordingly.

We have carefully considered, among other portions of the record, the opinion of the trial judge, from which we quote the following:

"It is the defendant's claim that, in the light of the undisputed facts in the record, this testimony (of Nicholas Salazar) is so unbelievable as not to constitute substantial evidence upon which the case would properly be submitted to the jury. * * * If this notice was not given as testified to by the witness Nicholas Salazar, there was no basis for recovery by the plaintiff. The question raised by the defendant's motion for judgment notwithstanding the disagreement of the jury is: In the light of the undisputed facts, was the uncorroborated testimony of Nicholas Salazar that the notice was given

such 'substantial evidence' as would take the case to the jury? I am of the opinion that it was not.

"The court is not here concerned with the general principle that the credibility of witnesses and the weight to be given to testimony is to be determined by the jury and not by the court. But before there is any question for the jury's consideration the court has the responsibility to determine the preliminary question, namely, whether there is *credible evidence* which, if believed by the jury, will support each essential element of the plaintiff's case. If on any one point there is no evidence, or *the only evidence is incredible* in the light of the undisputed facts, there is no question for the jury to consider. It is the court's responsibility to see to it that the jury's determination does not rest on evidence which no reasonably intelligent, unbiased juror could believe in the light of the undisputed facts."

From this record we cannot find that the trial judge was justified in concluding that the testimony of Nicholas Salazar was devoid of any probative force. Cases cited in the opinion of the trial court from other jurisdictions are clearly distinguishable from that presented by the instant record; and are not an authority for the conclusion reached by the trial judge. On the record before us it is quite impossible to reach any other conclusion than that Nicholas Salazar gave positive and direct testimony to the effect that the defendant company did have timely notice of the gas leakage which resulted in the explosion and plaintiff's injuries; and the matter of the credibility was a question for the jury, not for the trial judge. A verdict may not properly be directed in favor of either party when the testimony presents controlling questions of fact. *White* v. *Huffmaster,* 321 Mich 225. See, also, *Dirkes* v. *Lenzen,* 239 Mich 270.

Defendant makes no claim that between the date of May 13th and the time of the explosion it made

any check as to there being a gas leakage as claimed by plaintiff. The sole defense is that defendant was not given any notice of the leakage. It is a fair inference from the record in the instant case that some of the jurors did give credence to the testimony of Nicholas Salazar as to his having notified defendant of the leakage. His credibility was for the jury.

The judgment entered in the circuit court is reversed, a new trial ordered, and plaintiff may have costs of this Court.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.